# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GERALYN CALLBECK,<br>      Plaintiff.<br>v.<br><br>FALLON COMMUNITY HEALTH PLAN, INC.,<br>      Defendant. | CIVIL ACTION<br>NO.  4:20-cv-40038-TSH |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS
## (Docket No. 13)

### August 14, 2020

**HILLMAN, D.J.,**

Geralyn Callbeck ("Plaintiff") filed this action against Fallon Community Health Plan, Inc. ("Defendant"), alleging several counts of discrimination and retaliation. Defendant moves to dismiss for failure to state a claim. (Docket No. 13). For the following reasons, the Court ***grants*** in part and ***denies*** in part its motion.

### Background[1]

Defendant hired Plaintiff to work as a Registered Nurse ("RN") in its Summit Elder Care site in May 2016. As an RN, Plaintiff's main duties included caring for wounds, taking patients' vital signs, administering IV lines and injections, and performing various administrative duties.

One morning in June 2019, Plaintiff woke up without any feeling in her right arm. She visited a hospital, and a neurologist diagnosed her with radial nerve palsy. Because radial nerve palsy "substantially limits an individual's ability to hold, lift, grip and otherwise apply pressure

---

[1] The following factual allegations are taken from Plaintiff's First Amended Complaint (Docket No. 10) and accepted as true for the purposes of this motion.

with his or her hands," Plaintiff applied for leave under the Family Medical Leave Act (the "FMLA") while she underwent treatment. (Docket No. 10 at 3). Defendant approved her request for leave and noted that Plaintiff could not return to work until she had "been cleared by [her] doctor to return . . . with no restrictions." (Docket No. 10 at 3).

Although Defendant had granted Plaintiff leave through August 9, 2019, Plaintiff sought to return to work in early July. Defendant asked Plaintiff to provide documentation of her restrictions and the expected end date for those restrictions. On July 12, Plaintiff submitted a letter from her doctor stating that she could return to work on July 15 without restriction and indicating that she would need to utilize wrist splints for one to six months. (Docket No. 10-2 at 1). Defendant informed Plaintiff that it considered "the wearing of wrist splints" a restriction, indicated that it could not accept this restriction, and denied her request to return. (Docket No. 10 at 4) (emphasis removed). When Plaintiff requested further explanation of the denial, Defendant replied that "[e]mployee and participant safety were key factors in the decision." (Docket No. 10 at 5).

Plaintiff obtained counsel and, on July 31, demanded immediate reinstatement with backpay through July 15. On August 7, Plaintiff received notice of a communication allegedly sent to Plaintiff's doctor on August 1 requesting clarification. Because her leave was scheduled to expire on August 9, Plaintiff sought an extension while she obtained further documentation of her restrictions. Her doctor drafted a second letter stating that Plaintiff could "return to work in her full and usual capacity without restrictions with the reasonable accommodation of wearing the right wrist splint," and Plaintiff submitted it on August 16. (Docket No. 10 at 5). Defendant authorized Plaintiff to return to work on August 26. (Docket No. 10 at 6). It refused, however, to

compensate Plaintiff for any lost wages between July 15 and August 26 or to restore any employee benefits used during this period.

On October 1, 2019, Plaintiff filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD"). (Docket Nos. 10 at 6, 10-8 at 1). Two weeks later, Plaintiff was involved in a car accident, and her driving license was suspended. (Docket No. 10 at 6). When Plaintiff informed Defendant about the incident, Defendant stated that her position required an "active driver's license" and a clean driving record. (Docket No. 10 at 6). Plaintiff challenged these requirements, reminding Defendant that they had not existed when it hired her in 2016, and Defendant amended its policy as applied to Plaintiff to require only "reliable transportation" to and from work. (Docket No. 10 at 6).

In January 2020, Plaintiff requested permission to withdraw her administrative action before the MCAD and to refile in state or federal court. The MCAD granted her request and dismissed the action on February 7.

On February 20, 2020, Plaintiff's clinical manager, Lynnette Bilodeau, and the facility's site director, Sheila Despres, sent Plaintiff home from work for displaying "slurred and slowed" speech. Although the two knew that Plaintiff took medications which could cause dry mouth and that Plaintiff's use of dentures could compound the condition, they suspended Plaintiff with pay pending an investigation into the cause of her speech impairment. (Docket No. 10 at 7). The next day, Linda St. John, the Vice President for Talent Management, called Plaintiff at 3:27pm demanding that she take a drug test in Shrewsbury at 4:45pm. Plaintiff stated that she could not appear for the drug test on such short notice given the suspension of her license, and Ms. St. John rescheduled the test for February 24. Although Plaintiff duly showed up to and passed the February 24 drug test, Defendant issued Plaintiff a written warning for "appearing to be under the

influence of drugs" at work and "not agreeing to be tested on the day it was requested."  (Docket No. 10 at 7–8).

In the following months, Defendant allegedly improperly disclosed confidential health and personnel information about Plaintiff to other employees.  Plaintiff overheard her fellow employees making light of her medical conditions, and she was harassed by her managers and fellow employees about the need to be "fit for duty" at work.  (Docket No. 10 at 8).

Plaintiff filed suit in this Court on April 3, 2020.  She served the complaint on Defendant on May 12, 2020.  The next day, Ms. Despres and Ms. Bilodeau called Plaintiff into Ms. Despres' office for allegedly displaying slurred and slowed speech again.  Although Plaintiff offered to take a test to rule out use of drugs or alcohol, Ms. Despres instead instructed Plaintiff to perform administrative work for the rest of the day and allow other employees to cover her patient care duties.  At the end of the day, Ms. Despres called Plaintiff back into her office to participate in a conference call with a representative from human resources.  Ms. Despres suspended Plaintiff with pay for failing to request necessary accommodations for her physical and mental conditions and informed Plaintiff that she "had 48 hours to obtain medical documentation stating what accommodations she would need to perform her essential job functions."  (Docket No. 10 at 8). During the call, the HR representative "interrupted [Plaintiff] and/or prevented her from speaking altogether on several occasions . . . , prompting [Plaintiff] to throw up her hands in frustration at one point."  (Docket No. 10 at 8–9).  Ms. St. John terminated Plaintiff one day later for allegedly making an obscene gesture during the May 13 conference call, even though Plaintiff did not make any such gesture.[2]

---

[2] Defendant alleges that Plaintiff raised her two middle fingers towards the phone during this meeting. Plaintiff, however, denies having made this gesture, and at this stage in the proceedings the Court accept her well-pled factual allegations as true.

4

Plaintiff amended her complaint on June 15, 2020.  (Docket No. 10).  Her First Amended Complaint raises the following claims against Defendant: (1) failure to reasonably accommodate the impairment associated with her radial nerve palsy (Counts I and II); (2) retaliation for filing a charge of discrimination before the MCAD (Counts III and IV); and (3) discrimination for the impairments associated with her depression, anxiety, attention deficit disorder, and use of dentures (Counts V and VI).  (Docket No. 9 at 9–12).  Defendant moved to dismiss all claims on June 29, 2020.  (Docket No. 13).

## Legal Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).  To survive the motion, the complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

**Discussion**

*1. Failure to Accommodate Claims (Counts I and II)*

Counts I and II assert that Defendant discriminated against Plaintiff in violation of M.G.L. c. 151B, § 4(16) ("Chapter 151B") and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112, by failing to reasonably accommodate the impairments caused by her radial nerve palsy.[3] To establish a prima facie case of failure to accommodate, a plaintiff must show that (1) she suffers from a disability or handicap;[4] (2) she could perform the essential functions of her job with reasonable accommodations, (3) she requested reasonable accommodations; and (4) her employer, despite knowing of her disability, denied to grant her reasonable accommodations. *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007); *Gudava v. Ne. Hosp. Corp.*, 440 F. Supp. 3d 49, 58 (D. Mass. 2020).

Here, Plaintiff has met her pleading burden. She alleges that, between July 15 and August 26, she qualified as a disabled and/or handicapped person under Chapter 151B and the ADA because (1) she suffered from an impairment (radial nerve palsy) that substantially limited her ability to work without accommodation, and (2) Defendant regarded her as having this impairment. (Docket No. 10 at 9–10). She also alleges that, beginning on July 15, she could perform the essential functions of her position with the reasonable accommodation of a wrist splint. (Docket No. 10 at 9). Finally, she alleges that "Defendant, through its authorized managers, employees

---

[3] Because Chapter 151B "tracks the ADA in virtually all respects," the Court analyzes the state and federal law claims together. *See Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 20 n.5 (1st Cir. 2002); *Gudava*, 440 F. Supp. 3d at 58.

[4] Under the ADA, "a person is considered disabled if she suffers from 'a physical or mental impairment that substantially limits one or more of [her] major life activities,' 42 U.S.C. § 12102(2)(A); is stigmatized by 'a record of such an impairment,' *id.* § 12102(2)(B); or is 'regarded as having such an impairment,' *id.* § 12102(2)(C)." *See Gillen*, 283 F.3d at 21.

and-or agents, unreasonably refused to grant the Plaintiff's requested accommodations and refused to allow the Plaintiff to return to work until August 26, 2019." (Docket No. 10 at 10).

Defendant disputes the allegation that it unreasonably refused to grant Plaintiff accommodation. First, it argues that, by providing Plaintiff with FMLA leave through August 26, it did reasonably accommodate her impairment. *See Gudava*, 440 F. Supp. 3d at 59 ("An employer need not provide an employee with the precise accommodation requested; it need only fulfill its 'duty . . . to engage in an interactive process.'" (quoting *Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008))). Defendant is correct that a leave of absence under the FMLA may be a reasonable accommodation under the ADA in some circumstances. *See Tarbell v. Rocky's Ace Hardware*, 297 F. Supp. 3d 248, 260 (D. Mass. 2018) (noting that, "[u]nder Massachusetts and federal law, a leave of absence and leave extensions" may constitute reasonable accommodations under the ADA "in some circumstances" (quoting *Fiumara v. President & Fellows of Harvard Coll.*, 526 F. Supp. 2d 150, 157 (D. Mass. 2007))). The Court cannot, however, say that such circumstances apply as a matter of law here, where Plaintiff actively sought to return to work, allegedly could safely return to work, and faced losing several weeks of employee benefits and/or wages through the continued use of FMLA leave. The parties need to develop a factual record before the Court may resolve this issue.

Defendant alternatively contends that the seven-week interval between Plaintiff's first request to return to work and the ultimate approval was not sufficiently long to qualify as a failure to provide reasonable accommodation. Whether "an unreasonable delay may amount to a failure to provide reasonable accommodations" depends on the circumstances, including "the length of the delay, the reasons for the delay, whether the employee was offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good

faith." *See Olson v. Chao*, No. 17-10970, 2019 WL 4773884, at *18 (D. Mass. Sept. 30, 2019) (citations and internal quotation marks omitted)). Again, the Court declines to decide this issue as a matter of law at this juncture. Defendant allegedly provided a cursory explanation of its initial denial, only requested further information from Plaintiff's doctor once she retained counsel, and proceeded to base its final approval on information available in the first letter submitted by Plaintiff. If these allegations are proven true, a reasonable juror could find the delay unreasonable under the circumstances. The Court thus ***denies*** the motion to dismiss Plaintiff's failure to accommodate claims.

### 2. Retaliation Claims (Counts III and IV)

Counts III and IV assert that Defendant unlawfully retaliated against Plaintiff for filing a charge of discrimination before the MCAD. To establish a *prima facie* case of retaliation, an employee must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal link existed between the protected activity and the adverse job action. *See Benoit v. Tech. Mfg. Corp.,* 331 F.3d 166, 175 (1st Cir. 2003); *see also* 42 U.S.C. § 12203; M.G.L. c. 151B, § 4(4).

Defendant does not dispute that Plaintiff engaged in protected activity when she filed a charge of discrimination before the MCAD or sued Defendant in this Court. Instead, Defendant contends that Plaintiff does not sufficiently plead any adverse employment action taken against her because she engaged in protected activity. The Court agrees in part and disagrees in part.

A. *Hostile Work Environment*

Plaintiff first suggests that Defendant took adverse employment action against her by creating a hostile work environment. *See Noviello v. City of Bos.*, 398 F.3d 76, 90–91 (1st Cir. 2005) (recognizing creation of a hostile work environment as an adverse employment action);

*Clifton v. Massachusetts Bay Transp. Auth.*, 445 Mass. 611, 616–17 (2005) (same). In support of her claim, she alleges that, between March and May, Defendant disclosed her confidential health and personnel information and incited its managers and employees to harass Plaintiff about her job performance. While the Court appreciates that this conduct, if proven true, likely rendered her work environment unpleasant and detracted from her productivity and job satisfaction, the Court is not convinced that it rises to the level of a hostile work environment. A hostile work environment is something more than a work environment where harassment or discomfort occurs. It is a work environment so permeated with discriminatory intimidation, ridicule, and insult as to alter the conditions of employment and render the situation abusive. *See, e.g.*, *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 43–44 (1st Cir. 2011). And here, Plaintiff has not plead the requisite frequency or severity to establish such a work environment. The Court thus ***grants*** the motion to dismiss as to the portion of Plaintiff's retaliation claims premised on the creation of a hostile work environment.

  B. *Paid Suspensions*

Plaintiff next contends that Defendant took adverse employment action against her when it suspended her twice with pay. An employment action qualifies as adverse under disability law "where it is substantial enough to have materially disadvantaged an employee," meaning "objective aspects of the work environment are affected," *Yee v. Mass. State Police*, 121 N. E. 3d 155, 162 (2019) (citations and internal quotation marks omitted), or where it has the potential to "dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 54, 57 (2006). Defendant argues that the paid suspensions at issue in this case do not fall within the umbrella of adverse employment action because they did not materially disadvantage Plaintiff and were only imposed to allow Defendant

time to reasonably investigate concerns of misconduct. Yet, Plaintiff has alleged that Defendant knew she took medications causing dry mouth and that her use of dentures could compound the issue, which undercuts the notion that Defendant had reason to suspect misconduct. Plaintiff also has pled facts which, taken as true, suggest a punitive motive beyond reasonably investigating suspected misconduct. For example, with respect to the first suspension, Plaintiff pleads that Defendant issued her a written warning admonishing her behavior even after she passed a drug test and returned to work. And with respect to the second suspension, she pleads that Defendant refused her request to immediately take a drug or alcohol test to prove her sobriety. Because the Court can infer from these circumstances that Defendant intended the two suspensions to materially disadvantage Plaintiff, the Court ***denies*** the motion to dismiss the portion of Plaintiff's retaliation claims premised on the suspensions.

    *C. Termination*

Finally, Plaintiff asserts that Defendant took adverse employment action against her by terminating her. Defendant does not dispute that her termination was a materially adverse employment action, but it contends that it is nonetheless entitled to dismissal because it provided a legitimate reason for the termination and Plaintiff cannot show the requisite causation in light of that reason. The Court disagrees. Plaintiff denies making the obscene gesture cited by Defendant for her termination. She specifically alleges that Defendant terminated her in response to her pursuit of a discrimination charge and, given the timing of her termination—mere days after she served her complaint—this allegation is plausible. The Court therefore ***denies*** the motion to dismiss the portion of Plaintiff's retaliation claims premised on her termination.

*3. Discrimination Claims (Counts V and VI)*

Counts V and VI assert that Defendant discriminated against Plaintiff in violation of state and federal disability law.  To establish a prima facie case of disability discrimination, a plaintiff must show that (1) she suffers from a disability or handicap; (2) she nevertheless could perform the essential functions of her job, with or without reasonable accommodation, and (3) her employer took an adverse employment action against her because of her disability.  *See Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 154 (1st Cir. 2009); *see also* 42 U.S.C. § 12112; M.G.L. c. 151B, § 4(16).

Here, Plaintiff alleges that she qualified as a disabled and/or handicapped person Chapter 151B and the ADA because (1) she suffered from physical and mental impairments related to her anxiety, depression, attention deficit disorder, and use of dentures, and (2) Defendant regarded her as being "physically impaired due to drug or alcohol use" or "substantially limited in her work duties by her medical history of dentures, anxiety, depression and ADD." (Docket No. 10 at 11). She also alleges that she could perform the essential functions of the RN position. (Docket No. 10 at 11).  Finally, she alleges that Defendant took adverse employment actions against her by suspending her twice with pay and terminating her.[5]  (Docket No. 10 at 11–12).  Because these allegations suffice to meet Plaintiff's pleading burden, the Court ***denies*** the motion to dismiss her discrimination claims.

---

[5]  Plaintiff also alleges that Defendant took adverse employment action against her by creating a hostile work environment.  For the reasons explained above, however, the Court determines that Plaintiff has not plead sufficiently severe or frequency conduct to establish a hostile work environment.  The Court thus ***grants*** the motion to dismiss as to the portion of her claims premised on the creation of a hostile work environment.

## Conclusion

For the reasons stated above, the Defendants motion is ***granted*** in part and ***denied*** in part. The Court dismisses Counts III, IV, V, and VI to the extent they rely on the creation of a hostile work environment.  In all other respects, Plaintiff's claims survive Defendant's motion to dismiss.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
